**FOR PUBLICATION**

FILED & ENTERED

AUG 24 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jeanmari DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re: | Case No.: 6:11-bk-30010-DS |
| Robert DeGour and Lynn Randle, | Chapter: 12 |
| | **MEMORANDUM DECISION RE TRUSTEE'S MOTION TO DISMISS BANKRUPTCY CASE** |
| Debtors. | |

Before the court is the motion (the "Motion," docket no. 26) filed by Wesley H. Avery, the chapter 12 trustee (the "Trustee"), to dismiss this case because the debtors are not eligible for relief under chapter 12.  The Bank of New York Mellon Trust Company, N.A. ("Mellon"), a creditor of the debtors, supports the Motion.  Robert DeGour and Lynn Randle (the "Debtors") oppose the Motion.

There is little guidance from case law regarding the chapter 12 eligibility issues raised in the Motion.  At the court's request, the parties submitted supplemental briefs and evidence on a number of issues and appeared at several hearings on the Motion.  When the parties submitted their final briefs and appeared at the final hearing on the Motion, the question presented was clear: whether the gross income of a non-farming California subchapter S corporation wholly owned by the Debtor wife should be included in the Debtors' gross income when determining whether the Debtors had sufficient farming

1  income to be eligible chapter 12 debtors.  To answer this question, the court must also

2  determine the meaning of "gross income," a term used but not defined in section 101(18)

3  of the Bankruptcy Code, in the context of determining chapter 12 eligibility.

4    Having considered the Motion and related pleadings, the record in this case, the

5  evidentiary objections of the parties, and the arguments of counsel at the hearings, the

6  court makes the following findings of fact and conclusions of law[1] pursuant to Federal Rule

7  of Civil Procedure 52(a)(1),[2] as incorporated by Federal Rule of Bankruptcy Procedure

8  7052.

9  **I.  JURISDICTION**

10    The bankruptcy court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(b)

11  and 1334(b).  The Trustee's Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

12  Venue is appropriate in this court.  28 U.S.C. § 1409(a).

13  **II.  INTRODUCTION**

14    The Debtors filed a voluntary chapter 12 petition on June 18, 2011.  The Debtors

15  reside at 38770 Avenida La Cresta, Murrieta, California 92562 (the "Property"), where they

16  also operate two businesses: (1) Bootin' Digger Equine ("BDE"), a sole proprietorship

17  owned and operated by the Debtor husband since 1991 to breed, raise and sell horses;

18  and (2) ADR Associates, Inc. ("ADR"), a California subchapter S corporation owned and

19  operated by the Debtor wife as a marketing and consulting business.  The Property

20  includes a barn, corral, portable horse stalls and a riding arena used for BDE's operations.

21    In Schedule I, the Debtors disclosed average monthly income of $32,966, consisting

22  of $16,730 in regular income from BDE, $15,101 in regular income from ADR, $623 from

23  pension or retirement income and $512 from alimony.  Also in Schedule I, the Debtor

24  husband listed his occupation as "Horse Breeder/Owner" and the name of his employer as

25

26  [1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

27  [2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and all "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP")

28  which make applicable certain Federal Rules of Civil Procedure ("FRCP").

"Bootin' Digger Equine," and the Debtor wife listed her occupation as "Consultant/President" and the name of her employer as "ADR Associates, Inc."  In response to question 1 on the Statement of Financial Affairs, the Debtors disclosed that they earned $210,718 in 2010 from employment or operation of business, attributable to "H: $119,112.00, W: $91,606.00."[3]

On September 29, 2011, the Trustee filed his Motion seeking dismissal of this case because the Debtors are not eligible for chapter 12 relief under 11 U.S.C. §§ 109(f) and 101(18).[4]  The Trustee determined that the Debtors had received only $84,912 from BDE in 2010 compared to $91,606 from ADR in 2010, based on federal income tax returns, monthly operating reports, business profit and loss statements and other documents received from the Debtors as well as the Debtors' testimony at the section 341(a) meeting of creditors.  The Trustee contended that a $34,200 "management fee" paid from ADR to BDE was "a phantom bookkeeping entry which is not reflected on the Debtors' tax return."  Subtracting the 2010 "management fee" from the Debtors' purported $119,112 gross income from BDE left total gross income from BDE of $84,912—less than the $91,606 gross income from ADR.  Thus, argued the Trustee, the Debtors did not meet the definition of "family farmer" under section 101(18) and were ineligible for relief under chapter 12 pursuant to section 109(f) because less than one-half of their income in the taxable year preceding the filing of the petition (i.e., 2010) was derived from farming operations.[5]

The Debtors filed an opposition to the Motion arguing, in part, that the management fee issue was irrelevant because "ADR's gross income should not be counted in the income analysis, only salary paid, distributions paid, and net income should be attributed

---

[3] The court presumes that "H" and "W" mean "husband" and "wife."

[4] The Trustee (and later, Mellon) raised several grounds for dismissal.  They asserted that the Debtors were ineligible for relief under chapter 12 because they did not engage in a traditional "farming operation," did not have sufficient regular annual income and did not meet either the debt or income tests.  The court is only ruling on the income test.

[5] The Trustee also contended that the Debtors did not receive more than one-half of their income from farming operations in each of the second and third taxable years preceding the petition date (i.e., 2008 and 2009).  The Debtors concede that they do not meet the chapter 12 eligibility requirement based on 2008 and 2009  gross income.

1  to Lynn." The Trustee filed a reply to the Debtors' response, asserting that the Debtors

2  were merely sidestepping the "farm income" requirement "by arguing (without any citation

3  to authority) that the gross income of the Horse Ranch should be counted *in toto* while only

4  the net income of ADR should be also counted under Section 101(18)(A) because ADR is

5  an 'S' Corporation owned wholly by the Wife and not a dba like the Horse Ranch." Mellon,

6  while not formally joining the Trustee's Motion, asserted the same eligibility arguments as

7  the Trustee in connection with a plan objection, and the court heard all eligibility arguments

8  together. [6]

9      After the first scheduled oral argument, the court continued the hearing to allow the

10  Debtors additional time to file their individual 2010 federal tax return and to allow all parties

11  an opportunity to further brief the chapter 12 eligibility requirements after reviewing the tax

12  documents. The Debtors filed both their individual 2010 federal tax return and ADR's 2010

13  federal tax return and stipulated with the Trustee and Mellon to a further continuance of the

14  hearing and related briefing deadlines.

15      At the continued hearing, the court heard further argument on the Motion where the

16  Debtors argued vigorously that ADR's gross income should be excluded from gross

17  income for determining eligibility under sections 109(f) and 101(18)(A). The Trustee and

18  Mellon opposed this argument just as vigorously, and during the hearing, the parties and

19  the court addressed several issues that were not adequately addressed in the previous

20  briefing. The court continued the hearing once again and requested supplemental briefing

21  from all parties on two issues: (1) whether the gross income of ADR should be included in

22  the calculation of the Debtors' total gross income when determining eligibility for chapter

23  12; and (2) whether the monies derived from BDE's sales of horses should be included as

24  gross income or capital gains when determining the Debtors' gross income for establishing

25  chapter 12 eligibility.[7]

26

27  [6] Mellon later filed a joinder to the Motion on January 31, 2012.

28  [7] Initially, the parties disagreed whether income from BDE's horse sales should be classified as income or
capital gains. Because this issue does not materially affect the legal analysis before the court, all monies
derived from the horse sales will be treated as gross income of the Debtors.

At the final hearing before the court, the parties effectively resolved all factual disputes. The parties agreed that BDE earned $86,030 in gross income in 2010, that ADR earned $91,606 in gross income in 2010 and that the Debtors earned $14,248 in non-farm income unrelated to ADR in 2010. The only remaining issue before the court was a legal determination: whether, under the relevant statutory provisions, the court should include ADR's gross income when calculating the Debtors' total gross income for purposes of determining chapter 12 eligibility under section 101(18)(A). After the hearing, the court took the matter under advisement to consider this issue.

### III.  DISCUSSION

A.   Introduction

Dismissal of the case centers on the question outlined above: whether the Debtors earned more than one-half of their 2010 gross income from farming operations to qualify as "family farmers" eligible to file chapter 12. If, as the Debtors argue, the court excludes ADR's gross income when calculating the Debtors' total gross income for eligibility purposes, the Debtors satisfy the 50 percent "farm income" requirement and are eligible debtors under chapter 12. However, if, as Mellon and the Trustee argue, ADR's gross income is included in the calculation, the Debtors are ineligible for chapter 12 relief because they fail to meet the 50 percent "farm income" threshold.

B.   "Gross Income" for Determining Chapter 12 Eligibility is the Tax Code's Definition of "Gross Income"

Only a "family farmer" or "family fisherman" with "regular annual income" is eligible to be a debtor under chapter 12. 11 U.S.C. § 109(f). A "family farmer" may be either an individual or a corporation or partnership. *See* 11 U.S.C. § 101(18). Individuals (and their spouses) are "family farmers" if: (1) they are engaged in farming operations; (2) their debts do not exceed $3,792,650; (3) at least 50 percent of their noncontingent, liquidated debts (excluding any debt for the principal residence unless such debt arises out of a farming operation) arose out of their farming operations; and (4) *they received at least 50 percent of their gross income from farming operations in the preceding tax year or in each of the*

*second and third tax years preceding filing.*  11 U.S.C. § 101(18)(A) (emphasis added).[8]
Only the fourth prong—the "farm income" test—is at issue here.

To analyze this "farm income" requirement, a bankruptcy court must initially determine the amount of the debtor's gross income during the relevant tax year and then determine the portion of that income attributable to the farming operation.  *See* 2 *Collier on Bankruptcy* ¶ 101.18[6] (16th ed. rev. 2010).  This dispute centers on the appropriate definition of "gross income" as it is used to analyze the "farm income" test of section 101(18)(A).  Because the Bankruptcy Code does not define the term "gross income," the court must look elsewhere for guidance.

Courts are split as to the appropriate definition of "gross income" for determining chapter 12 eligibility.  The majority line of cases follows the decision of the Seventh Circuit Court of Appeals in *Matter of Wagner*, 808 F.2d 542, 549 (7th Cir. 1986) to import the federal Tax Code definition of "gross income" when determining whether the "farm income" test of section 101(18)(A) is met.[9]  *See In re Lewis*, 401 B.R. 431, 441 (Bankr. C.D. Cal. 2009); *The Cadle Co. v. King* (*In re King*), 272 B.R. 281, 293 (Bankr. N.D. Okla. 2002); *In re Gregerson*, 269 B.R. 36, 40 (Bankr. N.D. Iowa 2001) ("Courts have used the tax law meaning of 'gross income' in making chapter 12 eligibility decisions."); *In re Lamb*, 209 B.R. 759, 760-61 (Bankr. M.D. Ga. 1997) ("Congress intended the term 'gross income' to have its ordinary Tax Code meaning."); *In re Fogle*, 87 B.R. 493, 496 (Bankr. N.D. Ohio 1988); *In re Pratt*, 78 B.R. 277, 279 (Bankr. D. Mont. 1987); *In re Faber*, 78 B.R. 934, 935 (Bankr. S.D. Iowa 1987); *Matter of Schafroth*, 81 B.R. 509 (Bankr. S.D. Iowa 1987). "Indeed, in determining eligibility for chapter 12, some courts have refused to consider

---

[8] Section 101(18)(A) provides, in relevant part:

> [A]n individual or individual and spouse, must receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for (i) the taxable year preceding; or (ii) each of the 2d and 3d taxable years preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

11 U.S.C. § 101(18)(A).

[9] 26 U.S.C. § 61 provides that "gross income means all income from whatever source derived, including (but not limited to) the following items . . . (2) gross income from business."  26 U.S.C. § 61(a)(2).

1    anything besides the debtor's tax return." *Gregerson*, 269 B.R. at 40; *see also In re*

2    *Bergmann*, 78 B.R. 911, 912 (Bankr. S.D. Ill. 1987); *In re Nelson*, 73 B.R. 363, 365 (Bankr.

3    D. Kan. 1987).

4         The minority line of cases adopts a more flexible, case-by-case approach outlined

5    by *In re Rott*, 73 B.R. 366 (Bankr. D.N.D. 1987).  The *Rott* court reasoned that "[w]hile

6    there certainly is merit to these reasons [to follow the *Wagner* Tax Code approach], this

7    court does not believe that judicial economy, procedural convenience, and predictability

8    should be placed above the flexible nature of the Bankruptcy Code, and the objective of

9    reaching just and equitable results for both parties.  The circumstances of each case shall

10    be considered because 'gross income' is not an accounting term capable of precise

11    definition."  *Rott*, 73 B.R. at 371-72; s*ee also Cottonport Bank v. Dichiara*, 193 B.R. 798

12    (W.D. La. 1996)*; In re Way*, 120 B.R. 81 (Bankr. S.D. Tex. 1990).

13         Here, relying on the majority interpretation, the Trustee and Mellon argue that

14    because the Tax Code defines "gross income" to include "all income from whatever source

15    derived, including (but not limited to) . . . (2) gross income from business," ADR's total

16    gross income must be included in the calculation of the Debtors' gross income under

17    section 101(18)(A), resulting in farm income of less than 50 percent of gross income and

18    rendering them ineligible for chapter 12.  Relying on the minority interpretation, the Debtors

19    argue that the Tax Code is too rigid to determine "gross income" in the bankruptcy context,

20    and that the court should consider the "totality of the circumstances" instead of relying on a

21    mechanical approach.

22         This court finds the majority interpretation more persuasive.  As the Seventh Circuit

23    recognized in *Wagner*, a bankruptcy court must have a reliable mechanism to answer a

24    fundamental question: is the subject debtor a "farmer" under the Bankruptcy Code?  The

25    gross income guidelines outlined by the Tax Code and applicable case law offer such a

26    mechanism to determine whether debtors are farmers entitled to relief under chapter 12, or

27    whether they should file under a more appropriate chapter.  *Wagner* explains that by

28

enacting section 101(17),[10] Congress was not using the word "farmer" in its ordinary-language sense, as it had been used by previous law, because "[i]t had led to excessive uncertainty in application and was abandoned for a mechanical approach in which 'farmer' is a technical term" that is based on, among other factors, whether the debtor meets the statutory "farm income" threshold for the preceding taxable year. *Wagner*, 808 F.2d at 546. *Wagner* further notes that "[f]rom the statutory references to 'taxable year' and 'gross income,' both themselves technical terms, though of tax law rather than bankruptcy law, it is possible to infer that Congress intended to use these terms in section 101(17) in their tax sense." *Id.*

Contrary to the Debtors' argument, using the Tax Code definition of "gross income" does allow a court to consider the totality of the circumstances in determining eligibility, including in the assessment of whether debtors are engaged in farming operations and what portion of their debt arises out of farming operations. Section 101(18)(A) even permits debtors to meet the "farm income" test for the second and third taxable years before the petition date if they cannot meet the test for the taxable year immediately before the petition date, which again permits flexibility in establishing eligibility while giving the inquiry a needed level of certainty.

Therefore, in determining whether the Debtors meet the "farm income" test of section 101(18)(A), the court will look to the Tax Code for the definition of the Debtors' "gross income."

C.    The Debtors' Gross Income Includes Gross Income from a Subchapter S
      Corporation Owned by the Debtors

The inquiry does not end with the court's adoption of the Tax Code's definition of gross income. The court must still determine whether the gross income of ADR, a subchapter S corporation wholly owned by the Debtor wife, is gross income of the debtors.

---

[10] Section 101(17) is now section 101(18).

1    Under the Tax Code, gross income is defined as "all income from whatever source

2  derived." 26 U.S.C. § 61(a).  Within this definition are several enumerated types of

3  income, including "gross income from business."  26 U.S.C. § 61(a)(2).  Thus, if the

4  Debtors receive income from the ADR business, it appears that such income would be

5  included in the computation of total gross income under the Tax Code.  However, the

6  Debtors contend that ADR's gross income is not "gross income from business" of the

7  Debtors but rather of a separate corporation.  They argue that ADR is a "separate, stand-

8  alone" corporate entity that must "pay its own bills" before any funds are available for the

9  Debtors' use, and therefore its gross income should not be part of the Debtors' gross

10  income.

11    There is no binding authority regarding whether gross income from a wholly-owned

12  subchapter S corporation should be included in a debtor's gross income for purposes of

13  determining whether the debtor meets the 50 percent "farm income" test for chapter 12

14  eligibility.  However, at least one bankruptcy court has held that gross income as defined

15  by the Tax Code includes income from a subchapter S corporation owned by the debtor

16  and should be taken into account in determining whether a debtor qualifies as a "family

17  farmer."  *Matter of Schafroth*, 81 B.R. 509 (Bankr. S.D. Iowa 1987).  In *Schafroth*, the court

18  reasoned that because "[i]ncome from a closely held corporation that qualifies as a

19  subchapter S corporation passes through the corporation to the shareholders . . . the

20  corporation's income would be attributable to the debtors if [it] were a subchapter S

21  corporation."  *Schafroth*, 81 B.R. at 511-12.  Under 26 U.S.C. § 1366(b), income derived

22  from a subchapter S corporation "passes through" to the shareholder as ordinary income.[11]

---

[11] Section 1366(b) and (c) provide:

> (b) The character of any item included in a shareholder's pro rata share under paragraph (1) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation.

> (c) In any case where it is necessary to determine the gross income of a shareholder for purposes of this title, such gross income shall include the shareholder's pro rata share of the gross income of the corporation.

26 U.S.C. § 1366(b) and (c).

1    While not binding, *Schafroth* is well reasoned and consistent with the *Wagner*

2  definition of gross income adopted by this court.  Here, ADR is a subchapter S corporation

3  whose income passes though to its sole shareholder, the Debtor wife, as ordinary income

4  under the Tax Code.  Its income should be included in the Debtors' gross income.

5    Finally, the Debtors argue that only ADR's net income, not its gross income, should

6  be included in the Debtors' gross income for the "farm income" test of section 101(18)(A).

7  This argument is inconsistent with *Schafroth* and is inconsistent with analysis of the Tax

8  Code's definition of "gross income."  While "gross income from business" is not defined by

9  the Tax Code, the Treasury Regulations provide that "[i]n a manufacturing, merchandising,

10  or mining business, 'gross income' means the total sales, less the costs of goods sold." 26

11  CFR § 1.61-3(a); *see In re Cox*, 93 B.R. 625, 627 (Bankr. S.D. Ill. 1988); *Faber*, 78 B.R. at

12  93.  In contrast, "where a business is engaged primarily in the providing of a service, rather

13  than mining, manufacturing, or merchandising, the business gross receipts will constitute

14  gross income."  *Guy F. Atkinson Co. of California and Subsidiaries v. Comm'r of Internal*

15  *Revenue*, 82 T.C. 275, 298 (1984), *aff'd on other grounds* 814 F.2d 1388 (9th Cir. 1987);

16  *see also In re Sweitzer*, 332 B.R. 614 (Bankr. C.D. Cal. 2005) (court should disallow

17  deductions from gross receipts where income derived from "rendering of services").  Here,

18  ADR does not engage in manufacturing, mining or merchandising.  It is a marketing and

19  consulting business that provides services to its clients.  ADR's gross income, without

20  deductions, should be included in the Debtors' gross income.[12]

21

22

23

24

25

26  _____

[12] The Debtors' argument also treats one business differently from the other.  In essence, the Debtors wish to

27  have gross income from one business, the BDE farming operation, included in the calculation of their gross income, while including only net income (if anything at all) from their other business, the non-farming ADR

28  business.  Not only is the approach contrary to the persuasive authority, it appears self serving and internally inconsistent.

## IV.  CONCLUSION

Because ADR's gross income must be included in the calculation of the Debtors' gross income, the Debtors do not qualify as family farmers under section 101(18)(A) and are ineligible to be chapter 12 debtors under section 109(f).  The Motion is granted.

The Trustee shall submit a proposed order consistent with this memorandum.

###

DATED: August 24, 2012

_____
United States Bankruptcy Judge